UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re:<br><br>DAVID E. GRAVLIN, JR.,<br><br>Debtor | Chapter 13<br>Case No. 17-41714-CJP |

### ORDER DENYING MOTION TO DISMISS AND OVERRULING CONFIRMATION OBJECTION IN PART

Before the Court are (i) the Motion to Dismiss [Doc. No. 68] (the "Motion") filed by creditor Lora Fickett ("Fickett") seeking to dismiss the Chapter 13 case filed by David Gravlin Jr. ("Gravlin" or the "Debtor") and the Debtor's objection to the Motion [Doc. No. 75]; and (ii) Fickett's Objection to Confirmation [Doc. No. 16] (the "Objection") of the Debtor's proposed Chapter 13 plan [Doc. No. 7], which Objection the Court has also construed as being applicable to the Debtor's first amended Chapter 13 plan [Doc. No. 171] (the "Plan")[1] and the Debtor's response to the Objection [Doc. No. 20]. This Order constitutes the Court's findings of fact and conclusions of law as contemplated by Fed. R. Bankr. P. 7052, as made applicable to these matters pursuant to Fed. R. Bankr. P. 9014(c).[2] In reaching its determination, the Court considered the demeanor and credibility of each of the witnesses who testified at trial, all exhibits which were admitted into evidence, and the oral arguments of counsel to the Debtor and

---

[1] The Court entered an order [Doc. No. 197] construing the Objection as also applying to the Debtor's Plan because of the identity of issues between the plans with respect to Fickett's Objection.

[2] To the extent any item labeled as a finding of fact is actually a conclusion of law (or the opposite), it is adopted as such.

1

Fickett, who capably acted pro se. For the reasons set forth below, the Court denies the Motion and overrules the Objection in part.

I.  **Background**

The Debtor and Fickett were married in 1999 and separated in 2011. Since their divorce, the parties have been regularly engaged in litigation in the Middlesex Probate and Family Court (the "Probate Court"). The aftermath of the divorce has been very contentious, resulting in several contempt motions by Fickett and modification requests by the Debtor. Fickett filed a number of priority claims in the Debtor's bankruptcy case, which she asserts are not subject to discharge. The Debtor objected to several of the claims. The amount and priority of Fickett's claims have now been determined either by agreement of the parties or order of the Court.

Fickett seeks to dismiss the Debtor's case for "cause" under 11 U.S.C. § 1307(c),[3] stating, in sum, that the Debtor (i) did not file the petition or Plan in good faith, (ii) has not proposed a feasible plan or confirmed a plan in a reasonable amount of time because the Plan does not adequately treat the claims of Fickett and does not commit all of the Debtor's projected income to the Plan, and (iii) has failed to remain current on domestic support obligations after filing the petition contrary to the requirements of the Bankruptcy Code. Fickett objects to confirmation of the Plan because she asserts that (i) the Debtor's claimed expenses on Schedule J are inconsistent with amounts disclosed in financial statements submitted in connection with certain proceedings in the Probate Court, (ii) the Debtor has fluctuations in his income that make his Plan not feasible, (iii) the Debtor has undisclosed gambling losses, and (iv) the Debtor improperly transferred his masonry business to Errika Gravlin ("Errika") (his second wife from

---

[3] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code").

2

whom he is now divorced) and is "sheltering" income through that business for which he works as a salaried employee. The Objection and Motion include a number of overlapping issues, primarily whether the Debtor is actually the owner of the masonry business that is operated by Errika's company and whether the Debtor has undisclosed income from that business or other sources that would allow him to pay more to his creditors under the Plan, demonstrating bad faith. The Court conducted a trial regarding both the Motion and Objection and certain claim objections that are the subject of a separate order.[4]

## II.    Motion to Dismiss

On request of a party in interest, the Court may convert to Chapter 7 or dismiss a case, whichever is in the best interests of creditors and the estate, "for cause." 11 U.S.C. § 1307(c). "The moving party under § 1307(c) bears the burden of proof." *Stevenson v. TND Homes I, LP (In re Stevenson)*, 583 B.R. 573, 579 (B.A.P. 1st Cir. 2018). Section 1307(c) sets forth a non-exhaustive list of examples of what constitutes "cause" for dismissal and "[d]ismissal under § 1307(c) is committed to the bankruptcy court's discretion." *Id*.

For the reasons that follow, the Court denies the Motion because the Court finds that Fickett has not met her burden to demonstrate sufficient cause for dismissal under § 1307(c).

### a. Lack of Good Faith under 11 U.S.C. § 1307(c)

"Although lack of good faith is not specifically enumerated as 'cause,' it is well established that lack of good faith (or bad faith) is 'cause' for dismissal . . . of a Chapter 13 case under § 1307(c)." *Sullivan v. Solimini (In re Sullivan)*, 326 B.R. 204, 211 (B.A.P. 1st Cir. 2005). The Bankruptcy Appellate Panel for the First Circuit has adopted a totality of the circumstances

---

[4] At the trial, the Court also heard the objections filed by the Debtor to proofs of claim 9 and 10 [Doc. No. 25] (the "Claim 9 Objection") and [Doc. No. 26] ("Claim 10 Objection") filed by Fickett. *See* Ord., Doc. No. 225.

test to determine a debtor's good faith, which is imposed on a Chapter 13 debtor at two stages of the case. *See id.* "First, a debtor must file the Chapter 13 petition in good faith. Second, the debtor must file the Chapter 13 plan in good faith. The only distinction is that, under § 1307(c), the objecting creditor has the burden of proof, while under § 1325(a)(3), the debtor has the burden. Both inquiries advance one of the primary purposes of bankruptcy, which is to relieve the honest but unfortunate debtor from the weight of oppressive indebtedness, allowing the debtor to start afresh. If a creditor is successful in proving that the debtor filed the petition in bad faith, the court may dismiss the petition for cause." *Id.* at 211–12 (internal citations omitted).

Good faith is not defined in the Bankruptcy Code, so courts are left to engage in a fact-intensive analysis on a case-by-case basis. *See id.* at 212 (citation omitted) ("Whether this balancing of equities is called moralistic, judging, or evaluating, it is exactly what the courts have been left with under the ambiguous requirement of good faith."). "In applying the totality of the circumstances test to determine whether a Chapter 13 petition has been filed in bad faith, bankruptcy courts generally consider the following factors: (1) debtor's accuracy in stating her debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether she has attempted to mislead the court and whether she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter 13 relief." *Id.* (citations omitted). "A finding of bad faith does not require fraudulent intent by the debtor. Neither malice nor actual fraud is required to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor ill will directed at creditors, or that debtor was affirmatively attempting to violate the law—malfeasance is not a prerequisite to bad faith." *Id.* (citations and quotations omitted).

Fickett argues that cause exists to dismiss the Debtor's case because the Debtor has had the ability to pay his debts, has been found in contempt of Probate Court orders numerous times, has inconsistencies in the financial statements prepared in connection with his child support orders and bankruptcy petition, and transferred his masonry business to Errika to shelter his income. Mot. 4, ¶¶ 1.1–1.4. Further, she asserts that most of the debts listed in the Debtor's petition would be non-dischargeable in a Chapter 7 case, as they are "primarily back taxes and debts resulting from divorce." Mot. 4, ¶ 1.3. Fickett highlights that she is a "creditor of significant consequence," and alleges that the Debtor's "motivations and sincerity in seeking chapter 13 relief are believed to [be to cause] hardship" to her. Mot. 4–5, ¶ 4.

The Debtor credibly testified at trial that he filed his bankruptcy petition because he wanted "a fresh start" by addressing his debt through a Chapter 13 plan in order to move on with his life. Although Fickett asserts that the Debtor's main motivation in filing was to discharge certain of his debts to her, the Debtor testified that filing for Chapter 13 felt like his "only option in life at that point" and that he didn't want to remain in debt to any creditor. The Debtor testified that, after the Massachusetts Supreme Judicial Court vacated several contempt orders for non-payment of child support entered by the Probate Court due to his inability to pay, the Debtor felt he could move forward and do the best he could for all of his creditors. The Debtor further testified that he is not "running" from his debts and that, through his Plan, he will be paying unpaid child support owed to Fickett as a priority claim, as well as paying the Internal Revenue Service ("IRS") and other priority unsecured claims. The record reflects that proofs of claim were filed by Massachusetts Department of Revenue ("MDOR"), Citizens Bank, Verizon, and Toyota Motor Credit, in addition to those filed by Fickett and the IRS. The Plan provides for payment of a priority administrative expense claim to Debtor's counsel, priority claims of the

IRS, MDOR, and Fickett for child support and her attorney fees for child support, and a nominal dividend of .10% on unsecured claims totaling $273,411.80.

Fickett introduced the Debtor's credit report [Fickett's Ex. 7] to support her contention that several of his scheduled debts are actually not owed because the debts were listed on the credit report as "charge off." Debtor's counsel has argued that "charge off" does not equal debt satisfaction and that Fickett inaccurately interpreted the credit report.[5] The Debtor testified that he believed all of the creditors listed on his credit report were still owed amounts at the time of filing and he has never received notice that those debts were satisfied or that he no longer owed them. The Court does not find on this record that the Debtor's schedules of assets and liabilities or Statement of Financial Affairs were false or misleading or that the Debtor filed Chapter 13 for reasons other than financial rehabilitation that included addressing Fickett's claims in a manner consistent with the Bankruptcy Code.[6]

Additionally, after considering the record, the Court does not conclude that the Debtor has been dishonest in the bankruptcy process, attempted to mislead the Court, or manipulated the Bankruptcy Code. While the Court understands Fickett's concerns about the circumstances of

---

[5] Neither party provided specific evidence as to the meaning of "charge off" as used in the credit report, but, while a creditor may have "charged off" a debt for accounting or reporting purposes, that does not necessarily reflect a legal discharge of the right to collect that debt. Regardless of the status of certain debts as reported in the Debtor's credit report, it was the Debtor's belief that the amounts were owing, established through credible testimony, that is relevant to determination of his good faith in filing.

[6] Fickett argues that as "the creditor of significant consequence with over 70% of the debt claimed in the petition . . . owed directly to her[, c]onfirming this petition would be prejudicial" to her. Mot. 5, ¶ 2. She states that this is a basis for dismissal, citing the dismissal of the Debtor's first bankruptcy case on June 18, 2013 (the "2013 Case") by order of Judge Hoffman. *See* Mot. 5, ¶ 2. Judge Hoffman determined that cause existed in the 2013 Case because the Debtor failed to pay domestic support obligations during the pendency of the case. In this case, examining the totality of the circumstances, the Court has not found cause for dismissal and has found that the Debtor is current on domestic support obligations, as defined in § 101(14A) ("DSOs"), as discussed below. As such, the Court need not determine which of conversion or dismissal "is in the best interests of creditors and the estate." 11 U.S.C. § 1307(c).

the Debtor's employment by the masonry business formed by Errika, as will be discussed in more detail below, the Court finds that the arrangement was not undertaken for the purpose of hiding the Debtor's income. The Debtor does not have an equity interest in that business and there is no evidence of any undisclosed compensation arrangements.

### b. Failure to Remain Current on Domestic Support Obligations Postpetition under § 1307(c)(11)

Included in the non-exhaustive list of examples of what may constitute "cause" for dismissal is "the failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." § 1307(c)(11). Fickett alleges that "[s]ince December 26, 2017, the Debtor has missed 6 weekly payments of child support" and that if the obligations listed in Claim 9 are found to be domestic support obligations, that the Debtor "has missed all payments of $1,000 a month for that obligation." Mot. 6, ¶ 4. At trial, the evidence was undisputed that the Debtor is current on all postpetition child support payments as modified by the Probate Court. *See* Debtor's Ex. B. The Debtor testified that he is current on all DSOs and that those payments are automatically deducted from his paycheck. Fickett claims that the Debtor has failed to pay certain domestic support obligations in the nature of educational support and medical reimbursement. The Debtor has denied that he is obligated to pay these claimed amounts. Prior to the trial, this Court abstained from interpreting the Probate Court's order regarding the disputed educational support and medical reimbursement expenses and determining the Debtor's obligations with respect to these claims.[7] With respect to the debts

---

[7] The Court ordered [Doc. No. 162] Fickett to supplement her Motion to address issues raised at a hearing regarding medical and college expenses of the children. Fickett filed the supplement to the Motion [Doc. No. 176], to which the Debtor responded [Doc. No. 181], and the Court entered orders indicating that the payment of college and medical expenses are matters that should be interpreted by the Probate Court and were not grounds for dismissal at the time because it was not clear that the Separation Agreement required the Debtor to pay the claimed amounts. *See* Ords., Doc. No. 194 and Doc. No. 204. The Court instructed Fickett to request relief from the automatic stay to seek a determination from the Probate Court

7

listed in Fickett's Claim 9, the Court has determined that those obligations are not domestic support obligations. *See* Ord., Doc. No. 225.

### c. Unreasonable Delay that is Prejudicial to Creditors under 11 U.S.C. § 1307(c)(1)

"Cause" for dismissal under § 1307(c) includes "unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 1307(c)(1). Fickett contends that the Debtor has failed to obtain confirmation of a plan in a reasonable amount of time and that he has filed a plan that cannot be confirmed because it fails to provide that all of the Debtor's projected disposable income will be applied to make payments to unsecured creditors under the plan. *See id.* at § 1325(b)(1)(B). "When evaluating whether there has been unreasonable delay by the debtor which is prejudicial to creditors, the court must consider whether the debtor has engaged in some form of unreasonable delay, and whether the delay has been prejudicial." *In re Stevenson*, 583 B.R. at 579 (citations omitted). "The First Circuit has explained that dismissal under § 1307(c)(1) is appropriate where a further delay by the debtor would only prejudice creditors and make the feasibility of any plan unlikely." *Id.* (citations and quotations omitted).

After consideration of the record, the Court finds that there has not been unreasonable delay by the Debtor. While there have been delays because of the medical issues of counsel,

---

of these issues, and Debtor's counsel stated in open court that the Debtor would stipulate to have those issues determined by the Probate Court. Fickett filed a motion for relief from the automatic stay [Doc. No. 175], regarding which the Debtor filed a statement of no opposition [Doc. No. 182], but which was ultimately stricken for failure to file the associated filing fee [Doc. No. 203]. Fickett stated on the record at a status conference and pretrial conference on June 20, 2019, that she did not intend to pursue the determination of the disputed claims in the Probate Court or pay any fees that would be necessary to do that, expressing frustration with the results that she had been able to obtain in the Probate Court in the past. Consequently, Fickett is estopped from asserting these amounts as unpaid DSOs in connection with the Motion or Objection. The foregoing is without prejudice for Fickett to raise the non-payment of these and any other amounts that may be established as DSOs by the Probate Court in opposition to confirmation of any amended plan that may be filed or in connection with any future request for dismissal under § 1307(c)(11).

necessitating the appearance of successor counsel, and various discovery disputes, the Debtor filed a plan premised on his position that certain claims asserted by Fickett were dischargeable unsecured claims and certain claims were priority claims. The Debtor timely objected to Fickett's claims and has been diligent in seeking to resolve his objections given the circumstances of the case. The Plan could not be confirmed until the claim objections were resolved and the contested matter process has proceeded appropriately.

### III. Objection to Confirmation

In the Objection, Fickett asserts that the Debtor's Plan should not be confirmed because, among other things, the Debtor has understated his income and expenses, has undisclosed gambling losses, has improperly transferred his masonry business to Errika and is sheltering income derived from the masonry business formed by Errika[8] (the "Business"), in which he has an undisclosed interest, and did not file the Plan in good faith. Debtor denies Fickett's allegations, stating that his schedules, income, and child support itemization are accurate, he has not had gambling losses or gains for a number of years, there was no impropriety with the formation of the Business, and he has no interest in that Business other than as an employee. Resp., Doc. No. 20.

Because the Court overruled, in part, one of the Debtor's objections to the claims filed by Fickett, *see* Order at Doc. No. 225, and other orders entered by agreement of the parties established the allowed amounts of other priority claims, the Debtor must file an amended plan addressing Fickett's allowed priority claims pursuant to § 1322(a)(2) in the amounts that have

---

[8] Gravlin Stoneworks Incorporated is the masonry business that is operated by Errika, which employs the Debtor. The Debtor's former masonry business was named "Gravlin Masonry, Inc."

9

been established.[9] As such, the Court will reserve on ruling on certain objections raised in the Objection as premature, but will rule on others appropriate to be determined at this time.

### a. Does the Debtor have an undisclosed interest in the Business, and is the Debtor committing all disposable income to the Plan?

Where a creditor has objected to confirmation, a plan must provide that all of the debtor's projected disposable income will be applied to make payments to unsecured creditors under the plan. 11 U.S.C. § 1325(b)(1)(B). Further, a debtor must propose the plan in good faith, *see id*. at § 1325(a)(3), and a plan must provide for distributions on account of allowed unsecured claims having a value not less than the amount such creditors would receive in a liquidation under chapter 7, *see id*. at § 1325(a)(4). Fickett contends that the Debtor is not dedicating all of his projected disposable income to the Plan because she asserts that the Debtor is the real owner of the Business and all of its profits should be dedicated to payments under the Plan. She asserts that the Debtor possesses an interest in the Business since it is the "same" type of masonry business that he operated for many years. Fickett's suspicions are understandable, but the notion that the Debtor transferred his interest to Errika in order to hide income has been previously rejected by the Probate Court.[10] On the record before it, the Court cannot conclude that the

---

[9] A creditor holding an allowed unsecured claim for a domestic support obligation that, as of the date of the petition, is owed to or recoverable by a former spouse, is given first priority among all other unsecured creditors. *See* 11 U.S.C. § 507(a)(1). Further, § 1322(a)(2) requires that "a plan shall provide for full payment, in deferred cash payments, of all claims entitled to priority under § 507," unless the holder of a particular claim agrees to a different treatment of such claim. *Id*. at 1322(a)(2).

[10] In the *Memorandum as to Open Matters and Support for Orders/Judgment Entered on July 26, 2016* in the Probate Court, Judge Gorman stated: "The Court does not find that Mr. Gravlin transferred his company to his present wife in order to hide income. The Court finds that Mr. Gravlin and Errika are trying to recreate the business formerly owned by Mr. Gravlin. Although through their efforts the company and therefore their incomes may increase in the future, the Court does not find that Mr. Gravlin has the present income to support all of his financial obligations." Ord. dated July 26, 2016, Ex. D, 11. The parties have not asserted that the doctrines of *res judicata* or *Rooker-Feldman* preclude this Court from considering this issue. *Schwartz v. Schwartz (In re Schwartz)*, 409 B.R. 240, 246–47 (B.A.P. 1st Cir. 2008) (explaining that *Rooker-Feldman* prohibits lower courts, such as bankruptcy courts, from reviewing

Debtor has an undisclosed interest in or is sheltering income through the Business. While the evidence presented certainly demonstrates an unusual relationship between employer and employee because of the personal relationship between the Debtor and Errika and that Errika may be willing to adjust the Debtor's salary or his schedule to assist the Debtor or his daughter, the Debtor and Errika each credibly testified to facts establishing that Errika formed the business to assist the Debtor when he could no longer operate his business or obtain credit for that business and that she has worked to establish and grow the Business while employing the Debtor and relying on the Debtor's expertise.

Errika testified that she obtained a "Woman Business Enterprise (WEB)" certificate, which she earned by going through several interviews and proving that she was knowledgeable about the business and capable of doing masonry work. This WEB certificate provides Errika and the Business with access to a databank, where she receives preference on job bids in Massachusetts. She testified that this certificate has "opened many doors" and has been the source of the "vast majority of business" for the Business. Because of the certificate, she "brought in many more jobs than the Debtor ever could." She further testified that she started the Business at a time when the Debtor was incarcerated for failure to pay child support and that she obtained the WEB certificate on her own merit. Moreover, Errika testified that the Debtor has no authority over the Business and "he never has." The Debtor corroborated this by testifying that he has "no control or authority over the business at all." Although on the surface, given the Debtor's difficult divorce history with Fickett, such testimony may be viewed as self-serving, the

---

a state court's final judgment). Because the Court rules in a manner consistent with the finding of Judge Gorman, it is not necessary for the Court to address those doctrines.

demeanor of the witnesses and the evidence regarding current operation of the Business lends credence to the testimony.

As to the Debtor's compensation, the Debtor is paid $1,400 a week; he has no opportunity to participate in profit sharing of the Business or to earn bonuses. Errika determined the Debtor's compensation by considering the going rate of a mason, the Debtor's experience, and what the Business could afford. Errika testified that she understood that the Debtor is "certainly not getting paid what he is worth," but she did not believe he would be able to find work elsewhere due to his personal and financial circumstances. Errika also testified that due to the Business's uneven cash flow, there are times when compensation to the Debtor is deferred. Despite this, the Debtor has always been eventually paid in full, and in order to accommodate this, Errika does not always take her own salary. Indeed, she testified that she has never actually been paid her full annual "salary." On this record, the Court cannot conclude that the Debtor is paid more than was disclosed as his income in his filings throughout his case. Errika credibly and competently explained the Business's structure, the value of her WEB certificate, and how she operates and generates income for the Business. Her testimony demonstrated that her role is crucial for the Business's operation and ability to make bids and obtain projects, and that her role would not be able to be fulfilled by the Debtor, largely due to her WEB certification.

The Debtor's testimony also demonstrated that he is providing all of his projected income to fund the plan and that he has no ownership interest in the Business. The Debtor testified that he essentially lives "hand to mouth, week to week," and that "all of [his] extra income goes to [the] bankruptcy and [he] can barely get by with what [he] ha[s]."

As to the Debtor's gambling activities, the Debtor testified that he no longer gambled and introduced into evidence win/loss statements from Foxwoods Resort & Casino for 2016 and

2017 that showed an amount of "0" as the "the total slot and table activity at Foxwoods Resort Casino." Debtor's Ex. F. There is no evidence of previously undisclosed gambling activities warranting an adjustment to the Debtor's income or expenses.

### b. Has the Plan been proposed in good faith as required by 11 U.S.C. § 1325(a)(3)?

The Court employs the same and "totality of the circumstances" analysis described in Section II(a) above to determine whether the Debtor has filed the plan in good faith. *See In re Sullivan*, 326 B.R. at 211. "The only distinction is that under § 1307(c), the objecting creditor has the burden of proof, while under § 1325(a)(3), it is the debtor's burden." *Id.* at 211; *see also In re Bradley*, 567 B.R. 231, 236 (Bankr. D. Me. 2017) (explaining that the good faith requirements for a plan and a bankruptcy petition "are closely related and are frequently based on the same factors"). Based on the findings made in relation to consideration of the Motion above, the Court finds that the Debtor has met his burden to demonstrate that he filed his Plan in good faith and that he filed the petition in good faith.

### c. Objections reserved for consideration in connection with an amended plan

Fickett asserted that the Debtor failed to account for an adjustment that should be made to his net disposable income because a vehicle loan would be paid off, and that his food, medical insurance, and unreimbursed medical costs were understated. The Debtor will be ordered to file an amended plan and may file amendments to Schedules I and J in connection therewith. Fickett may renew these objections, if appropriate, in connection with the amended plan.

Fickett also objected to the feasibility of the Debtor's Plan based on "income fluctuations" experienced by the Debtor. While Errika testified that sometimes payment of wages to the Debtor by the Business was delayed, the Debtor has always been paid his salary. Because an amended plan may have a different payment amount, Fickett may renew this

objection and the Debtor retains the burden of proving that any amended plan is feasible as contemplated by § 1325(a)(6).

## IV.    Conclusion

For these reasons, the Court denies Fickett's Motion and overrules the Objection in part as provided above. The Debtor shall file an amended Chapter 13 plan consistent with this decision and the Court's Order on the Objections to Claims [Doc. No. 225], together with amended Schedules I and J if appropriate, within 30 days of the date of this Order.

Dated: March 6, 2020                                By the Court,

_____
Christopher J. Panos
United States Bankruptcy Judge